## RUSSELL S. BRADBURY

*vs.*

## INHABITANTS OF THE CITY OF LEWISTON.

Androscoggin.    Opinion April 1, 1901.

*Way.   Defect.   Notice.*

The defendant city, in constructing an iron bridge, placed iron plates at intervals transversely across the bridge to provide for the expansion and contraction of the iron, of which the bridge was constructed.   To provide for the laying of the tracks of a street railway along the bridge, the plates, before being placed in position, were cut into sections and were thus laid across the bridge.   When first placed in position the plates lay flat upon the floor of the bridge, and were not obstacles to public travel.   Subsequently, the travel upon the bridge caused the ends or corners of some of the sections of the plates, where they had been cut in twain, to turn or roll up to a height of two or two and a half inches.

The felloe of one of the wheels of the plaintiff's carriage caught under a turned up end of one of the sections of plate, by which he was thrown from his carriage, sustaining injuries for which he claims damages of the defendant city.

*Held;* that the knowledge which the city had of the condition and position of the sections of plates as originally laid, was not actual notice of the identical defect which caused the plaintiff's injuries, but was notice only of a cause which might produce a defect.

Upon an examination of all the evidence reported, the court is of the opinion that a jury could not reasonably infer a statutory twenty-four hours' notice to the defendant city of the defect alleged.

On report.   Plaintiff nonsuit.

Case for damages sustained by plaintiff through a defective highway.

*Geo. C. Wing*, for plaintiff.

*J. L. Reade*, city solicitor, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

FOGLER, J.   This is an action on the case to recover damages for personal injuries and damages to his wagon and harness, which

the plaintiff alleges that he sustained on the 12th day of May, 1899, by reason of a defect in the bridge spanning the Andros-coggin River, connecting the cities of Lewiston and Auburn, on that portion of the bridge which is within the limits of the City of Lewiston, and which that city is bound by law to maintain and keep in repair.

The defect complained of is that "a plate which formed a part of the construction of the bridge was turned up, or rolled up at the end, in such a position that a wheel on the floor of the bridge, crossing the bridge diagonally, would be caught under the plate."

The declaration alleges that, on the day above named, as the plaintiff was riding over said bridge, the felloe of one of the wheels of his wagon caught under the end of a plate so, as aforesaid, turned up, which stopped the progress of his team so suddenly that he was violently thrown from his wagon, and sustained injuries for which he claims to recover damages.

The case comes here upon a report of the evidence bearing upon the question whether the municipal officers or road commissioners of the defendant city had twenty-four hours' actual notice of the defect or want of repair, and upon the stipulation following, to wit:

"If the law court is of the opinion that, upon this evidence a jury could reasonably infer a statutory twenty-four hours' notice to the city of Lewiston, the action is to stand for trial, otherwise the plaintiff to be nonsuit."

The report shows that when the bridge in question was built in 1897, certain iron plates each eleven inches wide and about five-eighths of an inch thick were prepared to be placed at intervals, and secured upon one side, across the entire width of the bridge to provide for the expansion and contraction of the iron of which the bridge was constructed.

When the plans for the bridge were prepared, it was not contem-plated that the bridge would be used for street railway purposes, and it was intended that the plates should extend across the bridge unbroken and not in sections.

Subsequently, and before the iron plates referred to were laid, double tracks of street railway were laid over and along the bridge.

In laying the railway tracks it was found necessary to cut each of the said iron plates transversely upon each side of each railway track. It was soon found that by the use of the bridge the ends, or corners of the ends, of the plates where they had been cut were liable to turn or roll up so as to interfere with public travel.

It was under one of the turned up ends of one of the plates so cut that the felloe of the plaintiff's wheel caught, causing him to be thrown from his wagon. It is contended in behalf of the plaintiff that by reason of the cutting of the plates, the way thereby was defective in that respect and so remained defective until this accident occurred, and that as such cutting was done by the city, or at least under its direction, the city had actual notice of the defective condition caused thereby. In other words, to use the language of the plaintiff's counsel, " that the defect was original and was made by the city itself in deforming and mutilating these plates so that they became at once defective."

We do not think that such position is tenable. It is not claimed that the plates were dangerous to travel, so long as they lay flat upon the floor of the bridge, as they were when laid. The defect occurred when the plates turned up and so became an obstacle to travel. If the plates were so laid as to be likely to produce a defect, notice of that fact would not be notice of the identical defect which produced the injury to the plaintiff.

In *Pendleton* v. *Northport*, 80 Maine, 598, the plaintiff's horse was injured while he was attempting to cross a covered culvert which had become out of repair from an overflowing caused by unusually heavy rains. It was established at the trial that the culvert, in its original construction, was not of sufficient size to readily vent, at all times, the quantity of water seeking its way through it. The plaintiff contended that knowledge on the part of the town of the original construction of the culvert, and of its susceptibilities and tendencies for getting out of repair in case of a heavy rainfall, were actual notice of the defect produced by such causes, and that the under-sized culvert was the proximate and responsible cause of the accident.

The court overruled this contention saying, "We do not believe

that the law imposes upon towns such an enlarged liability as that construction would require of them." It is further laid down in that case that, "notice of the cause of the defect, or of some conditions which in some contingency might cause or create a defect, is not sufficient"; and further, "the defect was the broken and not the unbroken culvert, the culvert as it was after, and not before the deluge of rain." See cases there cited and also, *Gurney* v. *Rockport*, 93 Maine, 360 ; *Littlefield* v. *Webster*, 90 Maine, 213.

Applying the rule thus laid down, it is manifest that the defendant city did not, by reason of its knowledge of the construction of the bridge, have actual knowledge of the identical defect which caused the plaintiff's injury.

It may be true, that the road commissioner may have known that the plates were liable to become bent and thus defective and have been negligent relative thereto, but as the court say in *Hurley* v. *Bowdoinham*, 88 Maine, 293 : "Evidence that a highway surveyor negligently disregarded a general complaint . . . . has no tendency to prove that he had notice of a particular defect. . . . . But proof of gross inattention is not proof of actual notice." To the same effect is *Littlefield* v. *Webster*, supra.

Nor are we satisfied from the evidence reported that the city in any way had twenty-four hours' actual notice of the identical defect complained of. A witness testifies that on May 10th a wheel of his wagon was caught by the upturned end of another plate and that he notified the street commissioner of this defect about noon of May 11, but did not give notice of any other defective plate. The road commissioner testifies that such notice was given him by said witness at about four o'clock in the afternoon of the eleventh and that he immediately went to the place complained of and made necessary repairs, but that he did not examine the plate which caused the plaintiff's injury. As the plaintiff's accident occurred in the forenoon of May 12th, the notice, if it had been of the identical defect which caused the accident to the plaintiff, whether it was given at noon or at four o'clock in the afternoon, would not have been twenty-four hours' notice before the plaintiff's accident occurred.

We are therefore of the opinion that, upon the evidence reported, a jury could not reasonably infer a statutory twenty-four hours' notice to the city of Lewiston, and that in accordance with the stipulation, a nonsuit must be ordered.

*Plaintiff nonsuit.*